# UNITED STATES DISTRICT COURT

For the

District of Arizona

| | |
|---|---|
| In the Matter of the Search of Nine Devices (two computers, five cellular telephones, two USB drives) further described in Attachment A | )<br>)<br>)<br>)<br>)    Case No.    23-04106 MB |

## SEARCH AND SEIZURE WARRANT

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer of an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A**
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seized the person or property.

**YOU ARE COMMANDED** to executed this warrant on or before _____ June 5, 2023 _____
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Any United States Magistrate Judge _____ On Duty in the District of Arizona _____ .

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for the delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2023.05.22 19:19:19 -07'00'
*Judge's signature*

City and state: _____ Flagstaff, Arizona _____     Hon. Camille D. Bibles, United States Magistrate Judge
*Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>        23-04106 MB | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
|       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date:_____                  _____<br>                                          *Executing officer's signature*<br><br>                                       _____<br>                                          *Printed name and title* |

**ATTACHMENT A**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED**

**PROPERTY**:

The following computer, cellular phones, and digital storage devices are more fully described as:

i.  Computers:
1.  Dell Latitude 5400 Chrome ST, 6MVH473 Ex:14443816676 issued by Winslow High School with tag number X60621;
2.  Dell Latitude 5400 Chrome, ST: 9W322F3, with a stick labeled "Item # JP1" Laptop Computer with a sticker displaying "Winslow Unified School District #1" a with tag number X61564;

ii.  Cellular Phones:
3.  Black in color Samsung Cellular Phone with cracks all over the screen, no protective case, and IMEI: 354762610873;
4.  Black in color Samsung Cellular Phone with "cricket" and Samsung on the back.  The cellular phone has a red and black colored protective case: IMEI # 352453100883599.;
5.  Motorola XT2005 DL Phone ID 352180102881665 SIM ID:89148000005914721642;
6.  Cellular Phone – LG, Model: LG-VS501 S/N 808CYVU0854711;
7.  Cellular Phone – TCL, Model: TCL30Z / T602DL; S/N: 016053003096188;

ii.  USB Devices:
8.  USB provided by Winslow High School containing communications by JANE DOE; the 32 GB USB is black in color and contains the S/N: BM200957400W;
9.  USB containing the examination report compiled by the Arizona Department of Public Safety; the USB 3.0 is blue and gray in color with a sticker with the number "2022-0012571" on it;

**ITEMS:**

Search for all items listed within ATTACHMENT B.

//

//

//

//

//

//

//

//

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.   Image or movie files, or any other recordings of visual depictions of child pornography and files containing images of child pornography in any form wherever it may be stored or found on the device;

2.   Any information relating to any individual relating to an interest in child pornography, or an interest to distribute, receive, or possess child pornography;

3.   Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, or some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

    a.   Correspondence to and from any individual(s) including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

    b.   Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

    c.   Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    d.   Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

    e.   Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber

records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

4. Any data which evidences ownership or use of the DEVICES, including payment for Internet access or other storage devices, disks, or similar containers for electronic evidence.

5. a. Evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b. Evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software;

c. Evidence of the presence or lack of such malicious software;

d. Evidence of the attachment to the DEVICES of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e. Evidence of the times the DEVICES were used; and

f. Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES.

g. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

h. Records of or information about Internet Protocol addresses used by the computer;

6. Any and all communications between SUAREZ and JANE DOE in any format, to include any and all social media platforms and references to social media platforms, and including text messages, email messages, instant messages, and any evidence of computer based communications that access voice applications to communicate.

//

//

//

//

//

# UNITED STATES DISTRICT COURT
## for the
### District of Arizona

| In the Matter of the Search of | Case No.  23-04106 MB |
|---|---|
| *(Briefly Describe the property to be searched or identify the person by name and address)* | |
| Nine devices (two computers, five cellular telephones, two USB drives) further described in Attachment A | |

## ELECTRONICALLY SUBMITTED APPLICATION FOR A SEARCH WARRANT

I, Special Agent, Louis-Philippe Noel, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona,

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C § 2422(b) | Coercion and Enticement of a Child |
| 18 U.S.C. § 2252(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:
### As set forth in Attachment C, incorporated herein by reference.

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA *s/Gayle L. Helart*   *Gayle J. Helart*
Digitally signed by GAYLE HELART
Date: 2023.05.22 15:43:37 -07'00'

__X__ Sworn by Telephone

*Louis-Philippe Noel*
*Applicant's Signature*

Louis-Philippe Noel, Special Agent, FBI
*Applicant's printed name and title*

Date and time issued: _____

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2023.05.22 19:13:23 -07'00'
*Judge's signature*

City and State: Flagstaff, Arizona _____

Honorable Camille D. Bibles,, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED**

**PROPERTY**:

The following computer, cellular phones, and digital storage devices are more fully described as:

i.   Computers:
  1.   Dell Latitude 5400 Chrome ST, 6MVH473 Ex:14443816676 issued by Winslow High School with tag number X60621;
  2.   Dell Latitude 5400 Chrome, ST: 9W322F3, with a stick labeled "Item # JP1" Laptop Computer with a sticker displaying "Winslow Unified School District #1" a with tag number X61564;

ii.   Cellular Phones:
  3.   Black in color Samsung Cellular Phone with cracks all over the screen, no protective case, and IMEI: 354762610873;
  4.   Black in color Samsung Cellular Phone with "cricket" and Samsung on the back.  The cellular phone has a red and black colored protective case: IMEI # 352453100883599.;
  5.   Motorola XT2005 DL Phone ID 352180102881665 SIM ID:89148000005914721642;
  6.   Cellular Phone – LG, Model: LG-VS501 S/N 808CYVU0854711;
  7.   Cellular Phone – TCL, Model: TCL30Z / T602DL; S/N: 016053003096188;

ii.   USB Devices:
  8.   USB provided by Winslow High School containing communications by JANE DOE; the 32 GB USB is black in color and contains the S/N: BM200957400W;
  9.   USB containing the examination report compiled by the Arizona Department of Public Safety; the USB 3.0 is blue and gray in color with a sticker with the number "2022-0012571" on it;

**ITEMS:**

Search for all items listed within ATTACHMENT B.

//

//

//

//

//

//

//

//

# ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

1.  Image or movie files, or any other recordings of visual depictions of child pornography and files containing images of child pornography in any form wherever it may be stored or found on the device;

2.  Any information relating to any individual relating to an interest in child pornography, or an interest to distribute, receive, or possess child pornography;

3.  Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, or some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

    a.  Correspondence to and from any individual(s) including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

    b.  Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

    c.  Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    d.  Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

    e.  Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber

records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

4.      Any data which evidences ownership or use of the DEVICES, including payment for Internet access or other storage devices, disks, or similar containers for electronic evidence.

5.      a. Evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b.      Evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software;

c.      Evidence of the presence or lack of such malicious software;

d.      Evidence of the attachment to the DEVICES of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e.      Evidence of the times the DEVICES were used; and

f.      Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES.

g.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

h.      Records of or information about Internet Protocol addresses used by the computer;

6.      Any and all communications between SUAREZ and JANE DOE in any format, to include any and all social media platforms and references to social media platforms, and including text messages, email messages, instant messages, and any evidence of computer based communications that access voice applications to communicate.

//

//

//

//

//

1
2

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

3

4      IN THE MATTER OF THE SEARCH OF              )

5      Computers, cell phones, digital storage devices      )

6      Associated with Jane Doe, age 17 [protected identity])

7      More fully described in Attachment A                  )

8

9      I, Louis-Philippe Noel, a Special Agent with Federal Bureau of Investigation (FBI), being

10   duly sworn, deposes and states as follows:

11   **INTRODUCTION**

12   The facts of this case, as more fully detailed herein, are that Christopher Suarez (hereafter SUAREZ),

13   an approximately 40-year old man and resident of New York, is and has engaged in several violations involving

14   a 17-year old girl, referred to as JANE DOE in this affidavit; specifically violations of 18 U.S.C. §§ 2422(b)

15   (Coercion and Enticement of a Child), 2252(a)(2) (Distribution of Child Pornography), and 2252(a)(4)(B)

16   (Possession of Child Pornography).   These violations occurred as a result of sexually themed messages

17   between the two, and SUAREZ requesting and obtaining nude images of JANE DOE, some of which have

18   been described in a way that would meet the federal definition of child pornography under 18 U.S.C. § 2256

19   that she sent to SUAREZ as well as evidence related to SUAREZ' requests for JANE DOE to produce such

20   images and facilitate sending such images.   I am requesting a search warrant to search nine items—two

21   computers, five cell phones, and two USB drives (thumbdrives)--to locate these messages and JANE DOE's

22   nude images, These nine items described in this warrant are currently in the possession of the Federal Bureau

23   of Investigation-Phoenix Division, within the District of Arizona.

24   **PRELIMINARY BACKGROUND INFORMATION**

25   1.      I have been a Special Agent with the FBI since July 2017.   I have investigated matters related

26   to child sexual abuse for several years, to include violations that include child pornography and the sexual

27   exploitation of children.   I have received FBI training related to Crimes Against Children, and have

28

1

participated in the execution of numerous search warrants, of which many involved child exploitation and/or child pornography offenses. The search warrants related to crimes against children resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252 involving child exploitation offenses. I have also participated in the execution of search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to crimes against children. In the course of my employment with the FBI, I have observed and reviewed examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.      Based on my training and experience, and the facts set forth in this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 2422(b) (online coercion and enticement of a minor); 2252(a)(2) (distribution of child pornography), and 2252(a)(4)(B) (possession of child pornography) (the "TARGET OFFENSES") have been committed by SUAREZ, and that there is probable cause to search the DEVICES for evidence, fruits, and instrumentalities of violations of the TARGET OFFENSES, as further described in Attachments B. This Court has jurisdiction to issue the warrants for the DEVICES because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

4.      This affidavit serves to provide support for an application authorizing law enforcement to search the following (hereinafter referred to as the "DEVICES"):

   a.   As described in Attachment A, the following DEVICES:

      i.   Computers:

         (1) Dell Latitude 5400 Chrome ST:6MVH473 Ex:14443816676 issued by Winslow High School with tag number X60621 (information relating to this account can be found in paragraph 15.a.i., below);

2

(2) Dell Latitude 5400 Chrome, ST: 9W322F3, with a stick labeled "Item # JP1" Laptop Computer with a sticker displaying "Winslow Unified School District #1" a with tag number X61564 (information relating to this account can be found in paragraph 17.a.i., below);

    ii.  Cellular Phones:

(1) Black in color Samsung Cellular Phone with cracks all over the screen, no protective case, and IMEI: 354762610873 (information relating to this account can be found in paragraph 17.a.ii., below);

(2) Black in color Samsung Cellular Phone with "cricket" and Samsung on the back.  The cellular phone has a red and black colored protective case: IMEI # 352453100883599 (information relating to this account can be found in paragraph 17.a.iii., below);

(3) Motorola XT2005 DL Phone ID 352180102881665 SIM ID:89148000005914721642 (information relating to this account can be found in paragraph 15.a.ii., below);

(4) Cellular Phone – LG, Model: LG-VS501 S/N 808CYVU0854711 (information relating to this account can be found in paragraph 20.a.i., below);

(5) Cellular Phone – TCL, Model: TCL30Z / T602DL; S/N: 016053003096188 (information relating to this account can be found in paragraph 20.a.ii., below);

    iii.  USB Devices:

(1) USB provided by Winslow High School containing communications by JANE DOE; the 32 GB USB is black in color and contains the S/N: BM200957400W (information relating to this account can be found in paragraph 18.a.i., below);

(2) USB containing the examination report compiled by the Arizona Department of Public Safety; the USB 3.0 is blue and gray in color with a sticker with the number "2022-0012571" on it (information relating to this account can be found in paragraph 17.a.iv., below).

    5.    The statements in this affidavit are based in part on information and reports provided by the Winslow (Arizona) Police Department, NCMEC, and other law enforcement agencies, and on my experience and background as a Special Agent of the FBI.  Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation.

1  Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested
2  warrants.

3  **<u>DEFINITIONS</u>**

4        6.     The following non-exhaustive list of definitions applies to this Affidavit and Attachments A
5  and B (collectively referred to as "warrant"):

6        a.     "Child Pornography" is any visual depiction of sexually explicit conduct where (a) the
7  production of the visual depiction involved the use of a minor engaged in sexually explicit
8  conduct, (b) the visual depiction is a digital image, computer image, or computer-generated
9  image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,
10  or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable
11  minor is engaged in sexually explicit conduct. <u>See</u> 18 U.S.C. § 2256(8).

12        b.     "Child erotica" means materials or items that are sexually arousing to persons having a
13  sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast
14  to "child pornography," this material does not necessarily depict minors in sexually explicit
15  poses or positions.   Some of the more common types of child erotica include photographs that
16  are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   <u>See</u> <u>Kenneth V.</u>
17  <u>Lanning, Child Molesters: A Behavioral Analysis</u> (2001) at 65.   Federal courts have recognized
18  the evidentiary value of child erotica and its admissibility in child pornography cases.   <u>E.g.</u>,
19  <u>United States v. Cross</u>, 928 F.2d 1030, 1050 (11th Cir. 1991) (testimony about persons deriving
20  sexual satisfaction from and collecting non-sexual photographs of children admissible to show
21  intent and explain actions of defendant); <u>United States v. Caldwell</u>, 181 F.3d 104, 1999 WL
22  238655, *7 (6th Cir. 1999)(unpublished)(child erotica admissible under Federal Rule of
23  Evidence 404(b) to show knowledge or intent)(table case).

24        c.     "Visual depictions" include undeveloped film and videotape, and data stored on
25  computer disk or by electronic means, which is capable of conversion into a visual image.   <u>See</u>
26  <u>also</u> 18 U.S.C. § 2256(5).

27        d.     "Minor" means any person under the age of eighteen years or who appears to be under
28

the age of eighteen years.   See also 18 U.S.C. § 2256(1).

e.      "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.   See also 18 U.S.C. § 2256(2).

f.      "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."   See also 18 U.S.C. § 1030(e)(1).

g.      "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.   Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

h.      "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way they work.   Computer software is stored in electronic, magnetic or other digital form.   It commonly includes programs to run operating systems, applications and utilities.

i.      "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j.      "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data.   Data security

devices may consist of hardware, software or other programming code.   A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.   Data security hardware may include encryption devices, chips and circuit boards.   Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.   Data security software or code may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k.      "Internet Service Providers" (ISPs) are commercial organizations, which provide individuals and businesses access to the Internet.   ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment.   ISPs can offer various means to access the Internet, including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription.   ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports.   Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account.   By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password or in the event that the router is wireless and unsecured, can be accessed by anyone within close proximity to the physical location of the wireless router.

l.      "ISP records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).   These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format.   ISPs reserve and/or

maintain computer disk storage space on their computer system for their subscribers' use.   This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m.    "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

n.    "Records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o.    "Digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including the following:   central processing units; laptop or notebook computers; PDAs; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

p.    "Peer-to-peer file-sharing" (P2P) is a method of communication available to Internet

users through the use of special software.   Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network.   A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up files on a computer to be shared with outers running compatible P2P software.   A user obtains files by opening the P2P software on the user's computer, and conducting searches for files that are currently being shared on another user's computer.

q.      "Image" or "copy" refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device.   "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

r.      "Hash value" refers to a mathematical algorithm generated against data to produce a numeric value representative of that data.   A hash value may be run on media to find the precise data from which the value was generated.   Hash values cannot be used to find other data.

s.      "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t.      "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric characters with each level delimited by a period.   Each level, read backwards - from right to left- further identifies parts of an organization.   Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization.   For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice.   Additional levels may exist as needed until each machine is uniquely identifiable.   For example, www.usdoj.gov identifies the world wide web server located at the United States Department

8

of Justice, which is part of the United States government.

u.     "Log files" are records automatically produced by computer programs to document electronic events that occur on computers.   Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.   Logs are often named based on the types of information they contain.   For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v.     "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w.     "Website" consists of textual pages of information and associated graphic images.   The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

x.     "Uniform Resource Locator" or Universal Resource Locator" (URL) is the unique address for a file that is accessible on the Internet.   For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL.   The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

y.     "Remote Storage" refers to offsite data storage, where files are stored online, on a server or data storage device located elsewhere.   Remote storage is typically accessible only with a user ID and password and can be accessed from any computer with Internet access.   Often, remote storage locations can be mapped as a folder or drive on a computer where they can be accessed and used just like any other file, drive or device connected to the computer.   Typically this mapping is severed when a computer is logged off, or powered off.   Many remote storage

service providers store data in an encrypted format, where the data can only be accessed with the user's user ID and password.   In such cases, the service provider would not be able to access the data, or provide it to law enforcement, in an unencrypted form.   If a remote storage location is attached or mapped to a computer, copying the data on-scene may be the only way to access the data in the future.

z.     NCMEC: The National Center for Missing and Exploited Children (NCMEC) receives complaints via their Cybertipline from Internet Service Providers (ISPs), Electronic Service Providers (ESPs), and others. These Cybertipline reports are reviewed by a NCMEC analyst and forwarded to law enforcement for further investigation on the information provided in the Cybertipline report.

**BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY AND ONLINE CHILD EXPLOITATION**

7.     Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.     Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras.

c.     Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection.   Electronic contact can be made to literally millions of computers around the world.

d.     The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography.   As explained further below, the storage capacity of electronic media used in home computers has increased tremendously within the last several

years.   These drives can store extreme amounts of visual images at very high resolution.

e.      The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

f.      Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.   And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g.      As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media use for these purposes.   Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.   However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).   In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.   Such information is often maintained for very long periods of time until overwritten by other data.

h.      The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge.   Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically

stored multiple times and in multiple locations within the computer media.   As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it.   A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

i.       Data that exists on a computer is particularly resilient to deletion.   Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard drive can be stored for years at little to no cost.   Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools.   When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear, rather, the data remains on the hard drive until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.   Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.   The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed and more on a particular user's operating system, storage capacity, and computer habits.

**BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN**
**CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATIONS**

8.       Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that segregating information before commencement of the review of digital evidence by the examining agent is inconsistent with the evidence assessment process in child pornography and online child exploitation investigations.   This is true in

part because the items to be searched will not only contain child pornography but also will contain the identity of the user/possessor of the child pornography as well as evidence as to the programs and software used to obtain the child pornography, which may be located throughout the areas to be searched.

a.      As further described in Attachment B, this warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how the computers and cell phones were used, the purpose of their use, and who used them.   Additionally, the warrant seeks information about the possible location of other evidence.

b.      As described above and in Attachment B, this application seeks permission to search and seize certain records that might be found in the computers, cell phones and digital storage devices, either belonging to JANE DOE or SUAREZ, or containing information related to their interaction.   One form in which the records might be found is stored on a computer's hard drive, or other electronic media.   Some of these electronic records might take the form of files, documents, and other data that is user-generated.   Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

c.      Although some of the records called for by this affidavit might be found in the form of user-generated documents (such as word processor, picture and movie files), computer hard drives or cell phones can contain other forms of electronic evidence that are not user-generated. In particular, a computer hard drive may contain records of how a computer has been used, the purposes for which it was used and who has used these records, as described further in the attachments.   For instance, based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know the following:

i.      Data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

ii.    Virtual memory paging systems can leave traces of information on the hard drive that show what tasks and processes on the computer were recently in use.

iii.   Web browsers, e-mail programs and chat programs store configuration information on the hard drive that can reveal information such as online nicknames and passwords.

iv.    Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was in use.

v.     Computer file systems can record information about the dates files were created and the sequence in which they were created.  This information may be evidence of a crime or indicate the existence and location of evidence in other locations on the hard drive.

d.    Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity.   For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.    Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence

14

of particular data on a digital device is not segregable from the digital device.

f.      The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user and contextual evidence excluding a computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

g.      This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.   Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves and how computers are used.   Therefore, contextual information is necessary to understand the evidence described in Attachment A also falls within the scope of the warrant.

## SEARCH METHODOLOGY TO BE EMPLOYED

9.      The search methodology to be employed is as follows:

a.      All computers, computer hardware and any form of electronic storage that could contain evidence described in this warrant was seized for an off-site search for evidence that is described in the attachments of this warrant.   It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b.      Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the child pornography, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c.      Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its

attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

10.     Because it is expected that the computers, computer hardware and any form of electronic storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the case.

a.     Because of the large storage capacity as well as the possibility of hidden data within the computers, computer hardware and any form of electronic storage media, it is anticipated that there will be no way to ensure that contraband-free evidence could be returned to the user/possessor of the computer, computer hardware or any form of electronic storage media, without first wiping such evidence clean. Wiping the original evidence clean would mean that the original evidence would be destroyed and thus, would be detrimental to the investigation and prosecution of this case.

b.     Further, because investigators cannot anticipate all potential defenses to the offenses in this affidavit, and as such, cannot anticipate the significance of the evidence that has been lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by law enforcement until the conclusion of legal proceedings or until other order of the court.

c.     If after careful inspection investigators determine that such computers, computer hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE
## DISTRIBUTION OF CHILD PORNOGRAPHY

11.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there

are certain characteristics common to individuals involved in the possession and distribution of child pornography.   Those who possess and distribute child pornography:

a.      May receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.      May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the individual's residence to enable the collector to view the collection, which is valued highly.

e.      May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.      Prefer not to be without their child pornography for any prolonged time period.   This behavior has been documented by law enforcement officers involved in the investigation of

17

1   child pornography throughout the world.

2   **DETAILS OF THE INVESTIGATION**

3   12.   In March of 2023, the FBI received a NCMEC Priority Level 1 (Indicating current or imminent

4   risk to an individual) cyber tip.   The NCMEC tip detailed that a caller, *i.e.* a Mother (full identifiers known to

5   me) of a 17-year old girl, (hereafter referred to as JANE DOE—full identifiers known to me) had reported that

6   a 40-year old male, Christopher Suarez, had been communicating with JANE DOE since JANE DOE was 14

7   years old.   The NCMEC tip reflected that Mother had previously reported the matter to the Winslow (Arizona)

8   Police Department, near where JANE DOE and her family lived.    The tip explained that Mother said SUAREZ

9   resided in New York but had sent JANE DOE a cellular phone.   JANE DOE linked her Google accounts to

10  the cellphone and Mother stated she observed messages in which SUAREZ instructed JANE DOE to carve his

11  name on her chest to prove that she loved him, which she had done.   Mother stated the account SUAREZ

12  utilized to communicate with JANE DOE was Chrissuarez83@gmail.com.   Mother further described that

13  SUAREZ asked JANE DOE to do something sexual with a hairbrush and her body to prove that she loved him.

14  Mother found a video of the child using the hairbrush and it showed SUAREZ watching JANE DOE and

15  smiling at her; no additional details were provided on the NCMEC report related to the video.

16  13.   On May 17, 2023, I spoke with Mother to discuss the contents of the video related to the

17  hairbrush.   Mother was unable to recollect the specifics regarding a video depicting a hairbrush.   However,

18  Mother stated she had observed a screenshot of a video chat conversation between JANE DOE and SUAREZ

19  in which JANE DOE appeared to be masturbating with no pants on and SUAREZ appeared to be on the upper

20  hand corner of the screen shot.   Mother identified SUAREZ because JANE DOE previously showed Mother

21  photographs of SUAREZ via a TikTok account associated with SUAREZ under the username da_bully81.

22  14.   On March 21, 2023, I met with JANE DOE's parents to discuss the tip and the extent of

23  communications between SUAREZ and JANE DOE.   Mother described several photographs that were sent

24  by SUAREZ to her, Mother.   I personally verified that nude images of JANE DOE were among the images

25  allegedly sent by SUAREZ.   Specifically, one photograph showed JANE DOE's breasts and the top portion

26  of her vagina.   A second photograph showed JANE DOE with the name "Chris" carved on her nude breasts.

27  A third photograph showed JANE DOE's forehead with the words "Slut Puppy" written on JANE DOE's

28

forehead.   SUAREZ also sent message to Mother of screenshots of conversations between SUAREZ and JANE DOE in which JANE DOE's contact is saved under 'Wifey'(heart emoji)(engagement ring emoji).   One of the messages spoke about how SUAREZ wanted to be with JANE DOE in person and that he loved her; the message was signed "Chris Suarez always and forever."   Another message was sent by SUAREZ indicating that JANE DOE just turned 17 years old.   Additionally, several videos were sent to Mother by SUAREZ. One such video showed JANE DOE nude in front of the mirror, in which her breasts, top of her vagina, and butt.

15.    JANE DOE's parents filled out an FBI consent form (FD-26), for the purpose of the FBI searching the contents of two items (a computer and a cell phone), i.e. part of the group of nine DEVICES, that they turned over to me, specifically:

     i.  Dell Latitude 5400 Chrome ST:6MVH473 Ex:14443816676 issued by Winslow High School with tag number X60621

     ii.  Motorola XT2005 DL Phone ID 352180102881665 SIM ID:89148000005914721642 Password 0803

16.    On March 30, 2023, I went to the Winslow Police Department where I obtained three (3) additional items (i.e. a computer and two cell phones), and these are part of the nine items that are the DEVICES I am seeking the authority to search.   The three items had been seized by school officials and were associated with JANE DOE.   They have already been searched as a result of consent by the school and JANE DOE's parents, and also as a result of Navajo County Search Warrant Number SW 2023-00003, issued by the Honorable Judge Clark of the Navajo County Superior Court.   The probable cause supporting the Navajo County Search Warrant SW 2023-00003 included that on September 27, 2022, the School Resource Officer (full identifiers known to me) at JANE DOE's school submitted a report of possible sexual misconduct to the Winslow Police Department due to JANE DOE being in communication with an adult, Chris.[1]   As a result of the report, the school's Vice Principal (full identifiers known to me) and the High School Principal contacted the school's Internet Technology (IT) department regarding JANE DOE's assigned school laptop computer. The IT department identified that JANE DOE had been in contact with an adult male and saw messages that

---

[1] Chris Suarez was sometimes referred to as Chris Sanchez, but I believe the reference to "Sanchez" was simply a mistake by Winslow Police Department because there is no other reference to this name association.

the adult male was asking for photographs of her face instead of her body, because he did not want to get in trouble due to her age.  The Vice Principal stated there were several thousand messages between the two, many of which were sexual in nature.

17.     Further, as part of the probable cause, the affidavit indicated that the School Resource Officer then contacted JANE DOE's parents who advised the School Resource Officer that they had found nude photographs of JANE DOE on phones they confiscated from JANE DOE.   JANE DOE's parents stated the photographs were possibly sent to SUAREZ.   The School Resource Officer seized the school laptop and the two cellular phones located by the parents and turned over by the parents to the school officials.[2]   On January 4, 2023, Detective Jordan Payne, of the Winslow Police Department, executed search warrant number SW 2023-00003 by submitting the contents to the Arizona Department of Public Safety for digital forensic examination.

      a.   The following are the three (3) items listed on SW 2023-00003 provided to the FBI by the Winslow Police Department.   Additionally, one (1) USB was provided that contained the examination report from the Arizona Department of Public Safety which was generated as a result of a search of the three (3) DEVICES listed below, i, ii, iii:

          i.   Dell Latitude 5400 Chrome, ST: 9W322F3, with a stick labeled "Item # JP1" Laptop Computer with a sticker displaying "Winslow Unified School District #1" a with tag number X61564.

          ii.   Black in color Samsung Cellular Phone with cracks all over the screen, no protective case, and IMEI: 354762610873.

          iii.   Black in color Samsung Cellular Phone with "cricket" and Samsung on the back.   The cellular phone has a red and black colored protective case: IMEI # 352453100883599.

          iv.   USB containing the examination report compiled by the Arizona Department of Public Safety; the USB 3.0 is blue and gray in color with a sticker with the number "2022-0012571" on it.

---

2 An additional cell phone, i.e. a third cell phone, had been turned over by the parents also.   They described this phone as a newly purchased phone.   It contained nothing of evidentiary value and was returned to them; thus, it is not included in this affidavit.

18.     On March 30, 2023, I met with Winslow High School Principal (full identifiers known to me) who stated he was concerned for one of his students, JANE DOE.   The High School Principal stated that JANE DOE had been in communication with an adult man who has been calling the school and speaking with school counselors in order to provide and obtain information related to JANE DOE.   The High School Principal relayed that JANE DOE was having conversations with the adult individual over the school information technology network.   The High School Principal instructed his IT department to provide me with a USB device that contained communications to and from JANE DOE on the school network.   The High School Principal provided me with a printout of several recent messages, with one example being:

**SUAREZ:** I miss u   (March 27, 2023, at 7:20 p.m.)

**JANE DOE:**   I miss you too ill being doing testing so I wont be able to talk at all this day I love you ttyl (March 28, 2023 8:34 a.m.)

**SUAREZ:**   I love you more   (March 28, 2023, 8:35 a.m.)

**JANE DOE:**   love you more (March 28, 2023, 8:38 a.m.)

**SUAREZ:**   No me   (March 28, 2023, 8:39 a.m.)

**JANE DOE:**   nah bish I do   (March 28, 2023, 8:40 a.m.)

**SUAREZ:**   Then call me tonight when I get off work and we'll see who cums more (devil emoji) (March 28, 2023, 8:41 a.m.)

**JANE DOE:** 0_0[3]   (March 28, 2023, 8:42 a.m.)

**SUAREZ:**   Sound like a deal hmm   (March 28, 2023, 8:43 a.m.)

**JANE DOE:**   Maybe   (March 28, 2023, 8:43 a.m.)

**JANE DOE:**   are you ready to see a shaed head   (March 28, 2023, 8:43 a.m.)

**JANE DOE:**   are you ready to see a shaved head   (March 28, 2023, 8:43 a.m.)

**JANE DOE:**   are you ready to see a shaved head on a chick (March 28, 2023, 8:44 a.m.)

**SUAREZ:**   Hehe   (March 28, 2023, 8:44 a.m.)

**JANE DOE:**   hehe (March 28, 2023, 8:46 a.m.)

---

3 An internet search for this "0_0" defines this message as conveying confusion or being "weirded out."

**SUAREZ:**   Question is do I make u cum from anal first or just make u squirt everywhere till u pass out   (March 28, 2023, 8:46 a.m.)

**JANE DOE:**   Either is fine   (March 28, 2023, 8:48 a.m.)

**SUAREZ:**   Ik baby.   U like both hehe.   U love it when I make u my pretty little cocksleeve hehe (kiss emoji, heart emoji)   (March 28, 2023, 8:49 a.m.)

      a.   The following describes the USB provided by the High School Principal:

           i.   USB provided by Winslow High School containing communications by JANE DOE; the 32 GB USB is black in color and contains the S/N: BM200957400W

19.   I also requested the High School Principal provide the student user agreement that is signed by the student's guardian prior to being issued the privilege to access a school computer which he did.   I noted the following verbiage in the user agreement:

> Remember that a district-provided device is not yours personally.   It belongs to the school district.   Keep nothing on it that is so private that you wouldn't share it with a teacher, the principal, the tech department, or your parents.   Assume that your device can keep no secrets, because it can't.   Any device will be treated like a backpack-it can be searched.   Files stored on your device will not be private.   You also agree to allow authorized Winslow Unified School District #1 personnel the ability to review any and all files, data, messages, and email at any time with or without notice.   You understand and agree that your own personal electronic hardware (such as a different laptop computer) used on district property falls under this AUP.   You also understand and agree that you assume all risks and responsibilities when using your own personal computer equipment and that you will not connect any network capable devices without prior written permission of the District Technology Coordinator.   This connection privilege can be revoked without reason or notice.

//

//

22

20.     On April 27, 2023, a detective with the Winslow Police Department provided me with two (2) cellular phones that were given to him by JANE DOE's parents on April 18, 2023, for the purpose of being searched by the FBI.   The parents filled out two FD-26 'Consent to Search' forms relating to these two cell phones.   I contacted JANE DOE's parents to discuss the two DEVICES.   The parents relayed they were unaware of how JANE DOE was able to procure the new DEVICES and discovered that JANE DOE created a new Instagram account and had been in communication with SUAREZ.

a.   The following describes the two items provided:

i.   Cellular Phone – LG, Model: LG-VS501 S/N 808CYVU0854711

ii.   Cellular Phone – TCL, Model: TCL30Z / T602DL; S/N: 016053003096188.

21.     Winslow Police Department and I have checked Christopher Suarez' identifiers and have collectively learned the following: SUAREZ currently resides in, or at least recently resided in, Massapequa, New York.   SUAREZ is/was employed as a truck driver and was born in 1983 (full identifiers known to me), and is 40 years old.   SUAREZ has a criminal history, which includes arrests for narcotics charges, domestic battery, and assault.   Additionally, as shown below, the profile photograph for Instagram Account: lawless5150, which was in communication with JANE DOE and has location data that resolved back to the state of New York was registered to email address chrissuarez83@gmail.com.   I have observed that the photograph below significantly resembles the photographs from TikTok account Da_bully81 (comparison below), believed to be SUAREZ's account because it has also been in contact with JANE DOE and has sent messages to garner the attention of Mother, some of which appeared to make her believe he was in Winslow, Arizona because, for example, one progression of messages in March 2023 showed a picture of Sky Harbor Airport in Phoenix, Arizona, then pictures of places in Winslow, Arizona.

//

//

//

//

//

//

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Profile photograph from Instagram Account Lawless5150



Image taken from TikTok account da_bully81

**FORFEITURE**

22.     For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 18 U.S.C. § 981.

23.     Section 2253 provides, in relevant part:

(a) Property subject to criminal forfeiture-

(1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense, and;

(3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

24.     Pursuant to these Rules, I request immediate forfeiture of any property, including items of electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child pornography or online child exploitation.

//

//

//

//

//

//

//

//

//

//

25

1

## **CONCLUSION**

2    25.    Based on the foregoing, I respectfully submit there is probable cause to believe that Christopher

3    Suarez is in possession of child pornography and has been in communication with JANE DOE for the purpose

4    of enticing / coercing her, all in violation of 18 U.S.C. §§ 2422(b) (online coercion and enticement of a minor);

5    2252(a)(2) (distribution of child pornography), and 2252(a)(4)(B) (possession of child pornography) and that

6    the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of

7    this Affidavit, are located on the computers, cell phones, and USB drives, as more fully described in

8    Attachment A.

9                                  Respectfully submitted,

10

11                                  *Louis-Philippe Noel*

12                                  Louis-Philippe Noel
                                    Special Agent

13                                  Federal Bureau of Investigation

14    Subscribed and sworn before me this 22nd   of May, 2023.

15    **Camille**        Digitally signed by
                         Camille D Bibles
16    **D Bibles**       Date: 2023.05.22
                         19:10:21 -07'00'
17
      Hon. Camille D. Bibles
18    United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28